# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-423

**STATE IN THE INTEREST OF P.A.R., M.A.R., D.P.R, J.R.R., K.L.H. Jr.
AND K.L.H.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
ABBEVILLE CITY COURT
PARISH OF VERMILION, NO. JU-4384
HONORABLE EDWARD B. BROUSSARD, CITY COURT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ELIZABETH A. PICKETT
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese,
Judges.

**AFFIRMED.**

**Jo Ann Nixon**
**Glenda August & Associates**
**129 W. Pershing St.**
**New Iberia, La 70560**
**(337) 369-7437**
**Counsel for Appellee:**
**K.L.H. Sr.**

**Leah Antoinette Beard**
**825 Kaliste Saloom Road**
**Brandywine I, Room 218**
**Lafayette, LA 70508**
**(337) 262-1555**
**Counsel for Appellant:**
**State of Louisiana, Department of Social Services**

**Joseph Ricky LaFleur**
**Attorney at Law**
**120 South State Street**
**Abbeville, LA 70510**
**(337) 893-2030**
**Counsel for Appellee:**
**P.C.**

**Nicole M. Guidry**
**Attorney at Law**
**124 N. State Street, Ste. 300**
**Abbeville, LA 70510**
**(337) 740-8885**
**Counsel for Appellees:**
**P.A.R.**
**M.A.R.**
**D.P.R**
**J.R.R.**
**K.L.H. Jr.**
**K.L.H.**

**Bart Allen Broussard**
**Attorney at Law**
**209 E. St. Victor**
**Abbeville, LA 70510**
**(337) 893-1705**
**Counsel for Appellee:**
**C. R. R. H.**

**PICKETT, Judge.**

The State of Louisiana appeals a judgment of the trial court denying its petition to terminate the parental rights of CRRH and KH Sr.

<u>**STATEMENT OF THE CASE**</u>

CRRH is the mother of six children: PR, a boy, born October 24, 1991; MR, a girl, born November 24, 1992; DR, a boy, born September 28, 1994; JR, a girl, born November 30, 1995; KH, Jr., a boy, born November 29,1996; and KH, a boy, born April 9, 1998. PC is the father of the three oldest children, PR, MR, and DR. KH Sr. is the father of the three youngest children, JR, KH Jr., and KH.

In late August 2003, CRRH became angry with PR and hit him with a broom handle because she was mad at him. The first blow, to PR's legs, caused the broom handle to break. Pieces of the broken broom hit KH Jr. The second blow, with the splintered end of the broom handle, struck PR in the face, causing a laceration. Soon thereafter, CRRH fled the home. KH Sr., who was married to and living with CRRH at the time, did not seek medical attention for PC. Two days later, when KH Sr.'s mother saw PC, she contacted the police, who contacted the Office of Child Services (OCS). An Instanter Order removing all six children from the custody of CRRH and KH Sr. and placing them in the custody of the state was filed on August 29, 2003, and signed the same day. The six children have remained in the custody of the state since that time.

This was the second time the state had removed the children from CRRH's home. In May 1996, the four oldest children were removed because CRRH was living in a house that had been condemned for use by children under six because of high lead levels. CRRH had failed to move out of the house and had missed

1

appointments to monitor the elevated lead levels in the children's blood. The children were returned to their mother's custody in March 1997 and released from state supervision in May 1997.

Upon removal, the children were separated and placed with relatives or in foster homes. The parents were given a case plan to follow with the goal of reunification. The original plan included visitation with the children twice a month, a substance abuse evaluations, psychological evaluations, and parenting classes. CRRH and KH Sr. were also required to maintain suitable housing and notify OCS of any change of address. The plan was later amended to require CRRH and KH Sr. to get jobs and send $50/month for support of the children. The trial court held status conferences every six months to monitor their progress. The OCS reports indicate that while CRRH and KH Sr. did attend visitation with their children regularly, they failed to consistently attend parenting classes, anger management classes, or substance abuse counseling. They also both tested positive for cocaine and/or marijuana on several occasions. Neither CRRH nor KH Sr. paid any support. After he and CRRH separated, KH Sr. also failed to provide a permanent address. His mail was sent to his mother's house, where three of the children were living. When a case worker made a visit to the home, KH Sr. was babysitting the children. The children were subsequently removed from their grandmother's home.

In the OCS report dated July 23, 2004, the permanent plan was changed from reunification to adoption. A judgment continuing custody with the state dated August 12, 2004, notes that the goal is adoption. On February 14, 2005, the state filed a Petition for Termination of Parental Rights against CRRH, PC, and KH Sr. A hearing was held on January 24, 2006. The trial court took the matter under advisement. The

court issued Reasons for Ruling on February 14, 2006, wherein it indicated that the parental rights of PC would be terminated. The court stated that it would not terminate the parental rights of CRRH and KH Sr., but would "grant an additional six months continued custody to the State for a probable final opportunity for [CRRH] and [KH Sr.] to continue to work on case plans." The court indicated that it would require both CRRH and KH Sr. to follow their case plans more closely, including attending NA meetings and submitting to monthly drug screens. In Supplemental Reasons for Ruling issued on February 23, 2006, the trial court further explained its reasons, and also indicated that he would release both CRRH and KH Sr. from any support obligation previously ordered by the court. A judgment issued in conformity with the written reasons was signed on March 1, 2006. The state now appeals. PC has not appealed the termination of his parental rights.

## ASSIGNMENTS OF ERROR

The state asserts four assignments of error:

1. The trial court erred in its finding that the parents, CRRH and KH Sr.. had substantially complied with their case plans.

2. The trial court erred in failing to find that the parents', CRRH and KH Sr., parental rights should be terminated.

3. The trial court erred in releasing the parents from any support obligation previously ordered by the court.

4. The trial court erred in finding that the termination of parental rights was not in the best interest of the minor children.

## DISCUSSION

In *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599 (1982), the United States Supreme Court recognized that natural parents have a fundamental liberty interest in the care, custody, and management of their child and that the natural parents' interest does not "evaporate simply because they have not been model parents or have lost temporary custody of their child to the State."

3

The Court went on to acknowledge that, while the State has an "urgent interest" in a child's welfare and in providing the child with a permanent home, as long as there is reason to believe that a positive, nurturing parent-child relationship exists, the State's interest must favor preservation over severance of natural familial bonds. *Id.* at 766, 102 S.Ct. at 1401 (quoting *Lassiter v. Department of Soc. Servs.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)). **Thus, the Court found that parents who are faced with the possibility of forced dissolution of their parental rights must be provided with fundamentally fair procedures in order to ensure that children's legal bonds are not erroneously severed from fit parents.** *Id.* at 753-54, 102 S.Ct. at 1395.

*State ex rel. G.J.L.*, 00-3278, p.5 (La. 6/29/01), 791 So.2d 80, 84 (emphasis added).

The Louisiana Children's Code set forth the procedures required for removing children in need of care from the custody of their parents and the procedures that must be followed to reunify the children with their parents or terminate their parental rights. "Because due process requires that a fundamentally fair procedure be followed when the State seeks to terminate the parent-child legal relationship, actions to terminate must be scrutinized very carefully." *Id.* at 85.

Louisiana Children's Code article 673 states:

Within sixty days after a child enters the custody of a child care agency, the custodian shall develop a case plan detailing the custodian's efforts toward achieving a permanent placement for the child. The health and safety of the child shall be the paramount concern in the development of the case plan.

In this case, the children entered the custody of the state pursuant to an Instanter Order issued on August 29, 2003. The court held a hearing to consider the state's petition seeking that the children be adjudicated as children in need of care on November 13, 2003. The trial court issued a judgment the same day adjudicating the children in need of care. In the judgment, the court stated that the case plan for reunification was to be submitted and attached to the judgment. It was not. The judgment also states, "the Court hereby approves the case plan dated _____

4

which was submitted and filed by the Department of Social Services and is made a part of this Judgment by reference." There is no date on the line. Pursuant to La.Ch.Code art. 674, the case plan should have been submitted prior to the hearing, which was held seventy-six days after the children were placed in the custody of the state. Article 674 states:

> Copies of the case plan shall be filed with the court ten days before any scheduled disposition, permanency, or case review hearing. Upon filing, the department shall mail copies of the case plan to counsel of record and shall mail them by certified mail to any unrepresented parent at his last known address, unless otherwise ordered by the court for good cause.

A case plan was sent to the trial court in anticipation of a February 12, 2004, review hearing. The Children's Code explains the trial court's responsibility when reviewing the case plan at article 677, which states:

> A. At the disposition hearing, the court shall consider the content or implementation of the case plan and any response filed concerning it. At any other hearing held subsequent to the filing of the case plan, on its own motion or upon motion of any party for good cause shown, the court may consider the content or implementation of the case plan or of any response filed concerning it.
>
> B. If no party files a written response objecting to the case plan and the court finds the plan protects the health and safety of the child and is in the best interest of the child, the court shall render an order approving the plan.
>
> C. If the court does not approve the case plan, it shall enter specific written reasons for finding that the plan does not protect the health and safety of the child or is otherwise not in the best interest of the child.

The trial court did approve the case plan in a February 12, 2004, judgment. The next review hearing was held on August 12, 2004. The judgment approves a case plan, but the judgment also notes that the plan has been changed to adoption. There is, however, no revised case plan in the record that was filed either before the hearing

5

pursuant to article 674 or attached to the judgment. As the change or the goal of the case plan from reunification to adoption is a significant change, the case plan should have been in the record. This assures that the parents are served with copies of the case plan.

In a letter to the court dated October 19, 2004, OCS attaches a case plan, noting that it was "not available at the time of the hearing." This case plan also increases the support obligation of KLH Sr. and CRRH from $50.00 to $200.00. Since one of the reasons listed in the Petition to Terminate Parental Rights is the failure to provide support for a period of six months pursuant to La.Ch.Code art. 1015(4), this is also a significant change in the case plan.

The next review hearing was held on February 10, 2005. The trial court approved a case plan dated February 17, 2005. There is no evidence in the record of a case plan submitted to the court prior to the hearing, and the court cannot approve a case plan that has not been submitted until seven days after the hearing and meet the requirements of fundamental fairness as required by *Sandosky*.

The termination petition was filed on February 14, 2005. It listed two grounds for termination. The first was failure to comply substantially with the case plan pursuant to La.Ch.Code art. 1015(5), and the second was failure to provide support for six months. Since our examination of the record finds no properly approved case plan, the termination petition must fail. The "fundamentally fair procedure" required by our supreme court and outlined in the Children's Code has clearly not been followed. The judgment of the trial court is affirmed. Costs of this appeal in the amount of $120.00 are assessed against the state.

**AFFIRMED.**

6